UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELVIRA CISNEROS,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. EDCV 07-1401-JTL<br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On November 6, 2007, Elvira Cisneros ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of her application for Disability Insurance Benefits and Supplemental Security Income benefits. On November 19, 2007, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. On February 27, 2008, Michael J. Astrue, Commissioner of Social Security ("defendant"), filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on April 25, 2008, defendant filed an Answer to the Complaint. On July 7, 2008, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On January 26, 2005, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income benefits. (See Administrative Record ["AR"] at 16, 66, 70, 106). In her applications, plaintiff alleged a disability onset date of January 2, 2002, due to degenerated disc and bilateral hand surgery. (See AR at 16, 72, 74, 77-78; see also AR at 51). The Commissioner denied plaintiff's applications for benefits both initially and upon reconsideration. (AR at 51, 58; see AR at 48-49). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 64).

On January 4, 2007, the ALJ conducted a hearing in San Bernardino, California.[1] (See AR at 341-61). Plaintiff appeared at the hearing with counsel and testified with the aid of an interpreter. (See AR at 343-51, 357-58). Plaintiff's sister, Lucille Sanchez, and Corinne Porter, a vocational expert, also testified at the hearing. (AR at 351-54, 355-56, 358). On April 17, the ALJ issued a partially favorable decision. (AR at 12-22). In his decision, the ALJ determined that plaintiff had the following severe impairments: bilateral carpal tunnel syndrome, status post release, right shoulder impingement syndrome, disc protrusion at L4-S1 with an associated annulus tear, and degenerative disc disease of the cervical spine and disc protrusions at C4-C6. (AR at 18-19). The ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or equal the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (AR at 19). The ALJ determined that plaintiff was unable to sustain even sedentary work on a regular basis from March 1, 2001 to June 2, 2004, but, after June 2, 2004, there was medical improvement related to plaintiff's ability to work. (AR at 19). Specifically, after June 2, 2004, plaintiff became capable of performing a full range of heavy exertion, but her residual functional capacity precluded her from very forceful gripping, grasping and torquing, bilaterally and from repetitive overhead work with the right upper extremity. (Id.). Accordingly, the ALJ determined that

---

[1] The ALJ conducted an initial hearing on October 10, 2006. The ALJ continued the hearing to allow plaintiff to retain counsel. (AR at 336-40).

plaintiff was unable to perform her past relevant work as an assembler, cleaner and polisher, and egg packer, and could not make a successful adjustment to work that exists in significant numbers in the economy from March 1, 2001 to June 2, 2004. (AR at 20, 21). However, the ALJ concluded that, after June 2, 2004, plaintiff's residual functional capacity did not limit plaintiff's ability to return to these jobs, either generally or as actually performed.[2] (AR at 21). Ultimately, the ALJ concluded that plaintiff was disabled from March 1, 2001 through June 2, 2004, but was not disabled at any time thereafter. (AR at 17, 21, 22). The Appeals Council denied plaintiff's timely request for review of the ALJ's decision. (See AR at 5, 11).

Thereafter, plaintiff appealed to the United States District Court.

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1.  The ALJ failed to properly consider plaintiff's testimony and assess plaintiff's credibility.

2.  The ALJ failed to properly consider the type, dosage, effectiveness and side-effects of plaintiff's medication.

3.  The ALJ failed to pose a complete hypothetical to the vocational expert.

**STANDARD OF REVIEW**

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

---

[2] The ALJ noted that the occupation of assembler, cleaner and polisher was light, unskilled work. The occupation of egg packer was medium, unskilled work, but was actually performed by plaintiff at the light exertion level. (AR at 20).

adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

## DISCUSSION

### A.  The Sequential Evaluation

A claimant is disabled under Title II of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 141 (1987). Second, the ALJ must determine whether the claimant has a severe impairment. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Parra, 481 F.3d at 746. If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantially gainful activity. Id.

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times, the burden is on the claimant to establish his or her entitlement

to disability insurance benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

**B.      Plaintiff's Testimony Regarding Her Subjective Limitations**

At the January 4, 2007 hearing, plaintiff testified that she had not worked since 2000 or 2001 because her hands hurt when she moved them, and she had no strength after she had three surgeries on her hands. (AR at 346). She confirmed that she had surgery on her right hand in 2003, followed by two surgeries on her left hand. (AR at 347; see AR at 141, 147). Plaintiff testified that she underwent physical therapy on her hands and felt better while she was receiving the therapy, but her hands began to hurt again two or three hours later, when she got home. (AR at 347). Plaintiff further testified that her neck, lower back and her knee also hurt; her knee hurt a lot when she stood up. (Id.). She also stated that her heels and feet felt numb. (Id.). Plaintiff testified that her pain caused problems with her concentration and she would "forget a lot of things." (AR at 349-50). Plaintiff testified that she cooked and washed the dishes at home, but would drop plates and glasses. (AR at 348). She stated that she could not open up a can of food because she could not use her hands or move her fingers, and that she could not write. (AR at 349).

When the ALJ asked whether she took any pain medication, plaintiff testified that she was taking two Advil, two Tylenol and the anti-inflammatory prescribed by her doctor, but the medication caused her stomach to burn a lot.[3] (AR at 347). In response to the ALJ's question regarding whether she had gone to see her doctor to ask him about her hands, plaintiff replied that she had gone to see the doctor two weeks earlier because she could not sleep on her shoulder. (AR at 348-49). When the ALJ noted that plaintiff's record indicated that the only

---

[3] Plaintiff was also taking medication to treat her diabetes. (AR at 347-48).

1  medical treatment she had received was in March 2005[4], nearly two years earlier, plaintiff
2  explained that she had not seen any doctors because she did not have enough money to do
3  so; she started to go again once she was covered by her husband's insurance. (AR at 350).
4  Plaintiff stated that, between 2005 and plaintiff's visit to her doctor regarding her shoulder ache
5  two weeks earlier, she had been taking nearly three Ibuprofen each day, Tylenol and two Advil
6  twice a day, which would help her "[a] little," for "a few hours." (AR at 351).

7      Plaintiff's sister, Lucille Sanchez also testified at the hearing. Sanchez saw plaintiff once
8  or twice every two weeks and talked to plaintiff on the phone everyday or every other day. (AR
9  at 352, 354). Sanchez testified that, based on her observations, plaintiff had significant
10 problems using her hands. (AR at 352). Sanchez testified that plaintiff complained to her about
11 having problems with gripping and grabbing things, her shoulders, lifting heavy things and with
12 repetitive movement with both of her hands, and that her arms feel week when she tries to "put
13 strength or . . . grip something." (AR at 353). Sanchez also testified that plaintiff's pain caused
14 problems with her concentration, explaining that plaintiff would suddenly get confused in the
15 middle of a conversation and that plaintiff "wasn't like that before." (Id.). She testified that she
16 did not notice any improvement in plaintiff's hands after her surgeries, and that she believed
17 plaintiff's hands actually got worse. (AR at 354).

18     In his decision, the ALJ stated that he "considered all symptoms and the extent to which
19 these symptoms can reasonably be accepted as consistent with the objective medical evidence
20 and other evidence," as well as opinion evidence. (AR at 19). The ALJ stated that, prior to
21 2004, plaintiff's medical record showed that she had received extensive and aggressive medical
22 care, including surgeries, epidural injections and treatment by a pain management specialist.
23 (Id.). Further, the medical record showed evidence of right shoulder rotator cuff impingement,
24 bilateral carpal tunnel syndrome (right greater than left), degenerative disc disease of the
25 cervical spine, disc protrusion and an associated annulus tear. (Id.). The ALJ noted that,
26 despite significant care and treatment, including physical therapy, plaintiff's symptoms only

---

28  [4] The record indicates that plaintiff received her first mammogram examination on March 15, 2005. (AR at 314).

6

modestly improved and her carpal tunnel syndrome worsened, resulting in right carpal tunnel release in August 2003 and left carpal tunnel release in January 2004. (AR at 19; see AR at 141, 147). Accordingly, the ALJ accepted plaintiff's allegations regarding her symptoms and limitations and her inability to sustain work during the period between March 1, 2001 and June 2, 2004, because plaintiff's allegations were supported by substantial medical evidence. (AR at 19, 20).

As of June 2, 2004, however, the ALJ relied on the assessment of Enass Rickards, M.D.[5], that plaintiff had the residual functional capacity to perform a full range of heavy exertion, but was precluded from very forceful gripping, grasping and torquing, bilaterally and from repetitive overhead work with the right upper extremity, as being the most consistent with the medical record from that point forward. (AR at 19, 139). The ALJ stated that there was significant improvement in plaintiff's medical condition beginning on June 2, 2004. (AR at 20). The ALJ explained:

> [B]eginning June 2, 2004, [plaintiff's] medical treatment and care essentially ceased. From this point forward, she has sought medical treatment and care only a handful of times [AR at 305, 307, 314-17, 333]. Further, her consultative medical examination, performed in March 2005, revealed no significant clinical findings, whatsoever [AR at 324-30]. While [plaintiff] did present on two occasions with pain and stiffness [AR at 307, 333], there is no medical evidence that these symptoms are chronic, particularly considering [plaintiff's] consultative medical examination was entirely unremarkable.

---

[5] Dr. Rickards had previously provided a medical-legal examination of plaintiff in March 2002 with respect to plaintiff's claim for right upper extremity complaints. (AR at 132). Dr. Rickards re-examined plaintiff on April 14, 2004 with respect to her new claim regarding her shoulder pain, neck and hands. (See AR at 132-33). Dr. Enass' report regarding this second evaluation was prepared on June 2, 2004. (See AR at 132, 140).

7

> [T]he absence of significant medical care over the last 2 1/2 years, as well as the absence of evidence of any persistent and chronic symptoms, demonstrate significant medical improvement in [plaintiff's] medical condition beginning June 2, 2004. As detailed below, this improvement relates directly to [plaintiff's] ability to work.

(AR at 20). The ALJ further stated that he afforded little weight to the opinions of the State Agency evaluating medical consultants that plaintiff had non-severe impairments (see AR at 331-32, 334) prior to June 2, 2004 because they were contradicted by the weight of the medical evidence. (AR at 20). Finally, the ALJ stated that he considered, but rejected, plaintiff's sister's testimony:

> [Sanchez] stated that [plaintiff's] hands continue to bother her when she engages in repetitive activities. Further, she testified that [plaintiff] cannot lift heavy objects because she is too weak. Finally, she testified that [plaintiff] has concentration and confusion problem. However, as explained above, there simply is little medical evidence corroborating her claims after June 2, 2004. In fact, there is no medical evidence, whatsoever, supporting her claim that [plaintiff] has any loss of concentration or experiences mental confusion. In sum, the undersigned must conclude that Ms. Sanchez's . . . testimony does little to further the merit of [plaintiff's] applications after June 2, 2004.

(AR at 20).

Plaintiff now claims that, although the ALJ mentioned portions of plaintiff's sister's testimony in his decision, he did not discuss any of plaintiff's statements or testimony or make any findings as to plaintiff's credibility. (Joint Stipulation at 3-5, 8). Plaintiff argues that the ALJ failed to discuss and specifically identify what portions of plaintiff's testimony were not credible

and failed to provide clear and convincing reasons for rejecting plaintiff's testimony or statements. (Joint Stipulation at 5, 8).

Pain of sufficient severity caused by a medically diagnosed "anatomical, physiological, or psychological abnormalit[y]" may serve as the basis for a finding of disability. 42 U.S.C. § 423(d)(5)(A); see Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). However, an ALJ need not believe every allegation of disabling pain. See Orn v. Astrue, 495 F.3d 625, 635 (2007); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). The claimant need not produce evidence of pain other than his own subjective testimony. See Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Nor must the claimant present objective medical evidence of a causal relationship between the impairment and the symptom. Id. Rather, the claimant need only show that the impairment could reasonably produce some degree of the symptom alleged. Id. This approach reflects the Ninth Circuit's recognition of the "highly subjective and idiosyncratic nature of pain and other such symptoms," such that "[t]he amount of pain caused by a given physical impairment can vary greatly from individual to individual." Id.

If the ALJ finds that the claimant's impairment could reasonably have caused some degree of the pain or symptoms the claimant alleges, then, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1281; Batson v. Comm'r, 359 F.3d 1190, 1196 (9th Cir. 2004). The ALJ must specifically identify what symptom testimony is credible and what evidence undermines the claimant's complaints. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). On review, an ALJ's findings are entitled to deference if they are supported by substantial evidence in the record and are sufficiently specific for the reviewing court to assess whether the decision was impermissibly arbitrary. Bunnell, 947 F.2d at 345-56.

Here, the ALJ determined that plaintiff's bilateral carpal tunnel syndrome, status post release, right shoulder impingement syndrome, disc protrusion and associated annulus tear, and degenerative disc disease were established by objective medical evidence and constituted severe impairments. (See AR at 18-19). Further, implicit in the ALJ's acceptance of plaintiff's allegations regarding her symptoms and limitations for the period between March 1, 2001 and June 2, 2004 (AR at 19), is a determination that plaintiff's underlying impairments could reasonably produce some degree of the symptom alleged by plaintiff. Smolen, 80 F.3d at 1282. Moreover, the ALJ did not make an affirmative finding of malingering. As such, the ALJ could only reject plaintiff's testimony regarding her symptoms by providing specific, clear and convincing reasons. Smolen, 80 F.3d at 1281. The ALJ failed to do so. In determining plaintiff's residual functional capacity and finding that her condition significantly improved after June 2, 2004, the ALJ failed to specifically mention or refer to any of the testimony provided by plaintiff at the January 4, 2007 hearing, such as her testimony regarding her lack of strength in her hands following her hand surgeries, her hand, neck, lower back and knee pain, the numbness in her heels and feet, her inability to use her hands or move her fingers, and her testimony that her pain caused problems with her concentration and memory. (See AR 19-20; at 346-50). Thus, to the extent plaintiff's testimony related to her condition after June 2, 2004, the ALJ did not specifically identify which symptom testimony was not credible and what evidence undermined plaintiff's complaints. See Smolen, 80 F.3d at 1284; Morgan, 169 F.3d at 599; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) ("If there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the Secretary's reason for rejecting the claimant's testimony must be 'clear and convincing,' and supported by specific findings[.] It's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible. He 'must either accept [claimant's] testimony or make specific findings rejecting it.'" (citations omitted)); id. ("If the ALJ wished to reject [claimant's] pain testimony, he was required to point to specific facts in the record which demonstrate that [claimant] is in less pain than she claims."). Indeed,

the ALJ's decision does not include any credibility determination regarding plaintiff's subjective complaints, whatsoever. See Smolen, 80 F.3d at 1281-82 ("In deciding whether to accept a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis: the Cotton [v. Bowen, 799 F.2d 1403 (9th Cir. 1986)] analysis[, which requires the claimant to produce objective medical evidence of an impairment and show that the impairment could reasonably be expected to (not that it did in fact) produce some degree of symptom,] and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms."); see also Social Security Ruling ("SSR")[6] 96-7p (stating that, "[i]f an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms. The adjudicator must then make a finding on the credibility of the individual's statements about symptoms and their functional effects" and that "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").[7]

Moreover, the ALJ may not disregard plaintiff's testimony as to subjective symptoms solely because it is not substantiated by objective medical evidence. See SSR 96-7p ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."); Burch v. Barnhart, 400

---

[6] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies. Bunnell, 947 F.2d at 346 n.3. Although they do not have the force of law, they are, nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[7] In Orn, 495 F.3d at 635, the Ninth Circuit summarized the Social Security Rulings that specify the proper basis for rejecting a claimant's testimony. See SSR 02-1p; SSR 96-7p. Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment. Orn, 495 F.3d at 636 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989) and Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002)).

F.3d 676, 680 (9th Cir. 2005) (after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of the pain); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (claimant's testimony as to the severity of symptoms may not be discredited merely because it is not supported by objective medical evidence); Smolen, 80 F.3d at 1282; Lester v. Chater, 81 F. 3d 821, 834 (9th Cir. 1995) ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence."). Thus, ALJ's general findings that plaintiff's "consultative medical examination, performed in March 2005, revealed no significant clinical findings" and that there was a lack of medical evidence of persistent and chronic symptoms do not constitute clear and convincing reasons for rejecting or discrediting plaintiff's testimony. (See AR at 20). See Dodrill, 12 F.3d at 918.

Similarly, the ALJ's finding that plaintiff had not received significant medical care in the two and a half years preceding his decision does not constitute a clear and convincing reason for rejecting or discrediting plaintiff's testimony. (See AR at 20). See Dodrill, 12 F.3d at 918. Plaintiff had testified at the hearing that she had not gone to see any doctors regarding her condition because she did not have enough money to do so, and that she started to go again once she was covered by her husband's insurance. (See AR at 350). The ALJ did not mention this testimony in his decision or find plaintiff's explanation to be inadequate or incredible. See Orn, 495 F.3d at 636 (listing among the factors an ALJ may consider in weighing claimant's credibility "inconsistencies in testimony or between testimony and conduct" and an "unexplained, or inadequately explained, failure to seek treatment"). Moreover, the ALJ acknowledged that plaintiff had complained of pain and stiffness on two occasions since June 2, 2004. (AR at 20). Specifically, the record indicates that on February 8, 2005, plaintiff complained to her doctor of "multiple body part pains" including "neck, shoulder, arm" pains, and the doctor noted plaintiff's "carpal tunnel release surgery" and "ulnar nerve release." (AR at 307). The record also shows that, on April 21, 2005, plaintiff complained of neck, shoulder

1 and arm problems, numbness in both of her arms and hands, lower back problems, stiffness,
2 painful joints and weak muscles, which all restricted her activities of daily living; an examination
3 of plaintiff showed that her gait exhibited "guarding and stiffness," her "[c]ervical range of motion
4 was restricted in all motions with discomfort, she had positive cervical foramina compression
5 test and bilateral shoulder depression test, and that her lumbar range of motion was "reduced
6 in all motions with discomfort." (AR at 333). Cf. Flaten v. Sec'y of Health & Human Servs, 44
7 F.3d 1453, 1464 (9th Cir. 1995) (upholding ALJ's adverse credibility determination for regarding
8 plaintiff's claim that "lack of money prevented her from seeking help for ongoing problems,
9 because she sought appropriate medical care from a Dr. Matthews for other medical symptoms,
10 such as abdominal pain and gall bladder problems, during the intervening years. Reports from
11 those visits do not include any complaints related to back pain or to her surgery."); see also,
12 e.g., Orn, 495 F.3d at 638 ("Orn did not see physicians during the time he could not afford
13 medical treatment and, unlike Flaten, Orn sought treatment for his symptoms when he was able
14 to go to the doctor.").

15 Thus, the ALJ erred in failing to provide specific, clear and convincing reasons to support
16 rejection of plaintiff's testimony regarding her subjective limitations.

### C. Remand is Required to Remedy Defects in the ALJ's Decision

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

Here, the Court finds remand appropriate. On remand, the ALJ must offer specific, clear and convincing reasons for rejecting plaintiff's allegations regarding her subjective limitations subsequent to June 2, 2004, if he chooses to do so. The ALJ must specifically identify what testimony is credible and what evidence undermines plaintiff's testimony.[8]

---

[8] In the Joint Stipulation, plaintiff also contends that the ALJ erred in failing to properly consider the type, dosage, effectiveness and side-effects of plaintiff's medication and pose a complete hypothetical
(continued...)

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS this action for further administrative proceedings consistent with this Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: July 28, 2008

    /s/ Jennifer T. Lum    
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE

---

[8](...continued)
to the vocational expert. However, the ALJ's above-discussed error constitutes sufficient reason to remand this case. Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments again. In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.